UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:16-cv-178

| | |
|---|---|
| SHARON COFFEY BRUCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court upon Plaintiff's Memorandum (Doc. No. 7)[1] and Commissioner's Motion for Summary Judgment (Doc. No. 8). Having carefully considered the motions and reviewed the record, the court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.     Administrative History**

Plaintiff Sharon Coffey Bruce ("Bruce" or "Plaintiff") filed her application for Disability Insurance Benefits in October 2012, alleging a disability onset date of September 4, 2012. After Plaintiff's claim was denied both initially and on reconsideration, she requested and was granted a hearing before Administrative Law Judge Valorie Stefanelli ("the ALJ"). The ALJ issued a decision on April 9, 2015, that Plaintiff was not disabled, from which Plaintiff appealed to the Appeals Council. On August 3, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security

---

[1] Plaintiff's filing is solely styled as a Brief, but the Court will treat it is as a Motion for Summary Judgment.

1

("Commissioner"). Thereafter, Plaintiff timely filed this action, seeking judicial review of the ALJ's decision.

## II. Factual Background

In her decision, the ALJ at the first step determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 22). At the second step, the ALJ concluded that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine; major depressive disorder, recurrent; and anxiety disorder. (*Id.*). At the third step, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that meet or medically equal the severity of one the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.*).

After a consideration of the entire record, the ALJ then found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> except the claimant requires the option to alternate between sitting and standing wherein the job duties can be performed in either position. The claimant can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. Further, the claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant is further limited to simple, routine, repetitive tasks and low stress work, which is defined as work where few decisions need to be made to complete the work duties and there are few changes in the work duties. In addition, the claimant should not be exposed to crowds.

(Tr. 24). Based on these limitations, the ALJ found in the fourth step that Plaintiff is not capable of performing any of her past relevant work. (Tr. 30). Finally, at the fifth step, the ALJ concluded that there are other jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 31). Accordingly, the ALJ found that Plaintiff was not disabled under the Act. (*Id.*).

**III.     Standard of Review**

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson*, 402 U.S. at 400. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. *Hays*, 907 F.2d at 1456.

**IV.     Discussion**

On appeal, Plaintiff asserts that the ALJ erred in her decision because (1) she failed to properly weigh the medical opinion evidence, (2) she failed to properly evaluate Plaintiff's credibility, and (3) she relied on the Vocational Expert's testimony in response to a flawed hypothetical. After reviewing both parties' memoranda, the ALJ's decision, the administrative record, and relevant case law, the Court finds that the ALJ's decision must be affirmed.

**A. Medical Opinion Evidence**

A treating physician is a physician who has observed the plaintiff's condition over a prolonged period of time. *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983). The treating source rule generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. § 416.927(c)(2). But, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with

3

other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

At issue here is a Mental Impairment Questionnaire completed by Dr. Onyeagoro on September 25, 2014. Dr. Onyeagoro is a licensed psychiatrist who treated Plaintiff every two months, beginning in May 2014. The Commissioner does not dispute that Dr. Onyeagoro qualifies as a treating physician under the Social Security Regulations. After discussing at length the medical evidence found in the record, the ALJ assigned "little weight" to the Impairment Questionnaire because Dr. Onyeagoro's opinions in the Questionnaire "are not supported by any treatment notes and are largely based on the claimant's reports." (Tr. 30).

On appeal, Plaintiff claims that Dr. Onyeagoro's opinion was based on appropriate medical findings documented in the treatment records. She cites portions of the record compiled by Dr. Onyeagoro and other physicians documenting Plaintiff's symptoms in support. The ALJ noted, however, that these records relied heavily on Plaintiff's subjective statements as to the severity of her symptoms. (Tr. 30). As discussed in more depth below, the ALJ found Plaintiff's statements to be "not entirely credible" because there were several factual inconsistencies in her reports. (Tr. 25). Thus, while Plaintiff is correct that psychiatrists may rely on self-reported symptoms in assessing the severity of an impairment, such reliance does not immunize a psychiatrist's opinion from scrutiny in light of objective evidence to the contrary.

Further, the claimed period of disability extends back to September 2012, more than a year and a half before Plaintiff began seeing Dr. Onyeagoro. Yet Dr. Onyeagoro opined that Plaintiff's symptoms and limitations apply that far in the past. Dr. Onyeagoro based this opinion on the "patient's report." But that finding—based solely on Plaintiff's statements to Dr. Onyeagoro about symptoms she experienced a year and a half earlier—conflicts with the

opinions offered by two State agency psychologists who reviewed Plaintiff's file during that relevant time period (February 2013 and April 2013, respectively). Plaintiff claims that the opinions of these State agency psychologists cannot be given more weight than that of Dr. Onyeagoro because they could not have had access to all of her treatment notes. But, the State psychologists did not review an "empty file," as Plaintiff claims. Like Dr. Onyeagoro, they had access to Plaintiff's allegations of the severity of her symptoms. Further, they reviewed Plaintiff's treatment and medication management from her primary care physician. Thus, the ALJ correctly discounted Dr. Onyeagoro's opinion because she found the opinion to not be supported by clinical evidence and inconsistent with other substantial evidence in the record.

Alternatively, Plaintiff claims that even if Dr. Onyeagoro's opinion is not entitled to controlling weight, the ALJ erred by not providing sufficient reasons for assigning her opinion only "little weight." An ALJ is required to consider six factors in evaluating medical opinions: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors. 20 C.F.R. § 404.1527(c). Here, the ALJ stated that her evaluation followed this procedure. (Tr. 29). While Dr. Onyeagoro did have an examining and treating relationship with Plaintiff, she had only examined her on three occasions over a four-month period. (Tr. 400–411). And as discussed above, Dr. Onyeagoro's opinion lacked support and conflicted with other substantial evidence in the record. Accordingly, the ALJ did not err in assigning Dr. Onyeagoro's opinion "little weight."

### B. Credibility of Claimant

Plaintiff next contends that the ALJ improperly evaluated her testimony. An ALJ must follow a two-step analysis of a claimant's credibility. First, the ALJ must consider whether there is an underlying "medically determinable impairment that could reasonably be expected to

5

produce [the alleged] symptoms." 20 C.F.R. § 416.929(b). Second, if such an impairment is found, the ALJ must evaluate the "intensity and persistence of [the alleged] symptoms." *Id.* § 416.929(c). The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment. *Craig*, 76 F.3d at 595; 20 C.F.R. § 416.929(c); SSR 96-7p. The term "other relevant evidence" includes: a claimant's activities of daily living; the location, duration, frequency and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medications taken to alleviate their pain and other symptoms; treatment, other than medication, received; and any other measures used to relieve their alleged pain and other symptoms. 20 C.F.R. § 416.929(c).

Here, the ALJ first found that the "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 25). At the second step, however, the ALJ found "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms" to be "not entirely credible." (*Id.*).

In support of this finding, the ALJ explained several inconsistencies between Plaintiff's statements and other relevant sources of evidence. The ALJ found that Plaintiff's complaints of back pain were "disproportional to the clinical examination findings and diagnostic studies." (*Id.*). Contrary to Plaintiff's statements, the ALJ found that office treatment records showed Plaintiff to have only a "mild limitation of motion" in her back, and a "good range of motion of the hip joints without pain or deformity." (Tr. 26). The ALJ concluded that these "unremarkable objective findings are inconsistent with the claimant's testimony that she could only lift 5 pounds and she spends 90% of her day lying down." (*Id.*). Further, while Plaintiff reported that her pain

6

interfered with her concentration, the ALJ noted that she did not have difficulty completing activities of daily living, was alert and oriented during examinations, and had normal judgment and thought content. (Tr. 27–29).

Plaintiff also argues that the ALJ improperly relied on the fact that Plaintiff declined individual therapy in evaluating her overall credibility. She argues that decision should not have been weighed against her because "it is more likely" that the decision to not seek treatment was a symptom of her mental health impairments and that she didn't have health insurance at the time. (Pl.'s Br., 12). However, Plaintiff produces no evidence that these reasons were proffered to the ALJ at the time of the decision, nor does the treatment note state that either of those was the cause of her denial. (Tr. 383). Finally, Plaintiff does not present evidence that she pursued individual therapy after regaining her health insurance. Thus, Plaintiff has not shown that the ALJ's finding on credibility is unsupported by substantial evidence or is contrary to proper legal standards.

## C. Hypothetical Question

Plaintiff's third alleged error is that the ALJ failed to present an accurate hypothetical question to the Vocational Expert and thus did not properly account for the severity of her symptoms. She raises two reasons in support of this claim.

First, Plaintiff argues that the ALJ's limitation of her RFC to "simple, routine, repetitive tasks and low stress work, which is defined as work where few decisions need to be made to complete the work duties and there are few changes in the work duties" did not adequately account for the finding that she has a moderate limitation in concentration, persistence, or pace. In *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), the Fourth Circuit held that a limitation to "simple, routine, repetitive tasks" does not adequately account for a moderate limitation in

concentration, persistence, or pace. *Id.* at 638. However, the Court in *Mascio* further stated that an ALJ may limit a claimant to just "simple, routine, repetitive tasks" if the ALJ finds that the concentration, persistence, or pace limitation does not impact the claimant's ability to work and explains how she reached this decision. *Id.*

Here, with respect to Plaintiff's moderate limitation in concentration, persistence, and pace, this case is easily distinguishable from *Mascio*. Unlike in *Mascio*, the ALJ did more than limit Plaintiff to simple, routine tasks or unskilled work. Rather, she added an additional limitation that Plaintiff perform only "low stress work, which is defined as work where few decisions need to be made to complete the work duties and there are few changes in the work duties."

Several courts in this circuit have found that limiting decision-making and changes in work duties adequately account for a moderate limitation in concentration, persistence, and pace. *See Young v. Berryhill*, No. 2:16-cv-112, 2017 WL 6352756, at *5 (N.D.W.V. Dec. 13, 2017) (finding that because "changes can be a distraction," limiting change addresses a claimant's ability to stay on task); *Smith v. Colvin*, No. 7:15-cv-234, 2016 WL 5718241, at *3 (W.D. Va. Sep. 30, 2016) (finding a limitation to "only occasional decision-making" and "only occasional changes in setting" is sufficient); *Pearce v. Colvin*, No. 2:15-cv-32, 2016 WL 457446, at *4 (E.D.N.C. July 20, 2016) (Numbers, M.J) (finding that a limitation to only occasional changes is sufficient); *Rayman v. Comm'r of Soc. Sec.*, No. SAG-14-3102, 2015 WL 6870053, at *3 (D. Md. Nov. 6, 2015) (Gallagher, M.J.) (holding that such a limitation ensures that a claimant "is not distracted or required to adapt to changes in the workplace"). However, a few courts have held that such a limitation is not sufficient. *See Knight v. Comm'r of Soc. Sec.*, No. 9:15-cv-1512, 2016 WL 4926072, at *5 (D.S.C. Sep. 16, 2016) (finding that a limitation in workplace

8

changes does not speak to an ability to stay on task); *Hagedorn v. Colvin*, No. 2:12-cv-85, 2015 WL 4410288, at *4 (W.D.N.C. July 20, 2015) (limiting change is distinct from a limitation in concentration).

This Court agrees with the majority of cases that find that a limitation regarding workplace changes and decision-making adequately accounts for a moderate limitation in concentration, persistence, and pace. The Fourth Circuit in *Mascio* held that limitations dealing with a claimants "ability to stay on task" would adequately account for a limitation in concentration, persistence, and pace. 780 F.3d at 638. Because change is often distracting and the responsibility to make frequent decisions can be overwhelming, a limitation in workplace changes and decision-making responsibility certainly accounts for a claimant's ability to stay on task. Thus, the ALJ did not err under *Mascio*.

Second, Plaintiff argues that the ALJ failed to explain how a moderate restriction in social functioning only limited her to not being exposed to crowds. But, as the Commissioner argues, the ALJ sufficiently discussed the facts leading to the restriction and explained how they translated into the RFC limitation. Specifically, the ALJ found that Plaintiff felt suffocated around crowds and in crowded or small spaces, but that she had no issues grocery shopping, getting along with co-workers or authority figures, and general interactions with the public. Thus, the ALJ's limitation is supported by the evidence before her on the record.

## V. Conclusion

For the foregoing reasons, the Court finds that the ALJ followed proper legal standards and that her decision is supported by substantial evidence.

9

Accordingly, Plaintiff's Motion for Summary Judgment is **DENIED**, the Commissioner's Motion for Summary Judgment is **GRANTED**, and the decision of the Commissioner that Plaintiff was not disabled within the meaning of the Act is **AFFIRMED**.

**SO ORDERED**.

Signed: February 6, 2018

Graham C. Mullen
United States District Judge